**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF FLORIDA**

**ORLANDO DIVISION**

T.B., a minor, by and through his natural mother and legal guardian, VALERIE WHITE,

Plaintiffs,

vs.

PINEAPPLE COVE CLASSICAL ACADEMY AT LOCKMAR; THE SCHOOL BOARD OF BREVARD COUNTY, FLORIDA; PARIS KOBLITZ, individually; and JOHN OTTINGER, individually,

Defendants.

**Case No.: 6:26-cv-2204**

**VERIFIED COMPLAINT**

**JURY TRIAL DEMANDED**
**INJUNCTIVE RELIEF DEMANDED**

Plaintiff, T.B., a minor, by and through his natural mother and legal guardian, VALERIE WHITE, sues Defendants, PINEAPPLE COVE CLASSICAL ACADEMY AT LOCKMAR; THE SCHOOL BOARD OF BREVARD COUNTY, FLORIDA; PARIS KOBLITZ, individually; and JOHN OTTINGER, individually, and alleges:

## PRELIMINARY STATEMENT

1. This case concerns what happened after a minor student was disciplined and ultimately expelled following sexual contact with another student, notwithstanding evidence that included T.B.'s repeated statements that he refused at least portions of the sexual contact and a subsequent sworn statement to law enforcement denying consent.

2. T.B. reported that the female student initiated sexual contact with him; although his statements concerning consent were not entirely consistent, he reported refusing sexual contact on multiple occasions.

3. T.B. subsequently gave a sworn statement to law enforcement reporting that he had not consented to the sexual contact.

4. Law-enforcement records formally identified T.B. as a "Victim of Crime," although the investigating detective subsequently documented conflicting accounts concerning consent.

5. Pineapple Cove Classical Academy ("PCCA") in Palm Bay, FL, nevertheless classified T.B. as having committed a "Sexual Offense" ("SXO"), suspended him, pursued his removal from school, and recommended his expulsion from the Brevard County public-school system.

6. What followed was not simply a disagreement over school discipline.

7. T.B.'s mother, White, repeatedly told school officials that her son said he was the child who refused the sexual contact.

8. She requested additional investigation.

9. She requested the evidence being used against her son.

10. She requested his educational records.

11. She raised his documented history of disability-related educational needs and his prior Individualized Education Program ("IEP").

12. The evidence was materially conflicting, yet Defendants moved toward long-term exclusion and expulsion while representing that the investigation or review

remained underway and while Plaintiffs lacked access to material portions of the underlying evidence.

13. Defendants also possessed records demonstrating that PCCA had received T.B.'s IEP paperwork well before the incident.

14. Despite that history, Defendants prepared disciplinary documentation stating that there was "no reason to believe that a disability or handicap exists."

15. Defendants then continued toward expulsion even while their own personnel were still considering whether further educational evaluation of T.B. was necessary.

16. On or about May 28, 2024, the School Board of Brevard County entered a Final Order expelling T.B. from the Brevard County public-school system.

17. The damage did not end when the stated period of expulsion expired.

18. T.B. remains a minor.

19. He still needs an education.

20. His educational history, credits, disability-related records, placement information, and cumulative records remain necessary to determine where and how he should continue school.

21. White has sought T.B.'s educational records since the events that removed him from PCCA.

22. In August 2026, the consequences became immediate once again when White attempted to enroll T.B. in another public school.

23. On August 18, 2026, White personally appeared at Heritage High School in Palm Bay and executed the school's Student Records Request Authorization Form directed to PCCA.

24. She requested all eleven categories of student records identified on the form.

25. Those categories included T.B.'s cumulative file, official transcript, withdrawal information, psychological records, ESE records, Section 504 records, legal records, and disciplinary records.

26. The records that became available were profoundly incomplete.

27. Eight of the eleven requested categories produced no documents at all.

28. The records available to Heritage High School included no IEP for T.B., despite PCCA's earlier written acknowledgment that it had received his IEP paperwork.

29. The available educational record also failed to provide complete information concerning T.B.'s withdrawal, grade history, or accumulated credits.

30. The record available in August 2026 identified T.B. as a tenth-grade student while reflecting total credits earned of "zero."

31. The records contained no academic information for the 2024–2025 or 2025–2026 school years.

32. On August 24, 2026, White went directly to PCCA and personally requested her son's records, again, including his IEP and the records necessary to enroll him in public school.

33. PCCA refused to provide them.

34. Instead, White was told that PCCA could not help her and that she needed to leave, otherwise, she would be arrested for trespassing.

35. As of the filing of this action, T.B.'s complete educational records remain unavailable to him and his mother.

36. These are not merely litigation documents.

37. They are the records necessary to establish a child's educational history, credits, grade placement, disability-related services, educational evaluations, disciplinary history, and eligibility for appropriate educational services.

38. Their absence is interfering with T.B.'s ability to move forward with his education now.

39. Every school day lost while a minor child cannot obtain the records necessary to establish his educational placement is educational time that cannot later be restored through an award of money.

40. A court can award damages years from now.

41. It cannot give a child back the school days, instruction, academic progression, services, and educational continuity lost while litigation proceeds.

42. Plaintiffs therefore seek immediate judicial intervention.

43. Contemporaneously with or promptly after filing this Verified Complaint, Plaintiffs seek preliminary injunctive relief requiring PCCA and the School Board to immediately locate, produce, and transmit T.B.'s complete educational records so that his education can resume without further delay.

44. Taken together, Plaintiffs allege that Defendants advanced T.B.'s expulsion while material facts concerning the underlying incident remained disputed, Plaintiffs lacked access to material evidence being used in the disciplinary process, and disability-related issues remained unresolved. As a result, T.B. was denied a meaningful opportunity to understand, challenge, and respond to the factual and educational bases for his long-term exclusion from the public-school system.

## NATURE OF THE ACTION

45. This is a civil-rights action arising under the Constitution and laws of the United States.

46. Plaintiffs challenge the investigation, long-term discipline, disability-related decision-making, expulsion, and continuing educational consequences imposed upon T.B. following the April 2024 incident at PCCA.

47. Plaintiffs allege that Defendants deprived T.B. of procedural due process guaranteed by the Fourteenth Amendment.

48. Plaintiffs further allege that PCCA and the School Board denied T.B. meaningful and equal access to public educational programs and services in violation of Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.

49. T.B. seeks compensatory and nominal damages for these violations.

50. Plaintiffs also seek prospective injunctive relief concerning the continuing possession, completeness, availability, use, and effect of T.B.'s educational and disciplinary records.

## JURISDICTION AND VENUE

51. This Court has original federal-question jurisdiction pursuant to 28 U.S.C. § 1331.

52. This Court further has jurisdiction pursuant to 28 U.S.C. § 1343(a)(3) and (4).

53. Plaintiffs assert claims pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.

54. Plaintiffs further assert claims pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq*.

55. Plaintiffs further assert claims pursuant to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.

56. Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

57. This Court possesses authority to grant preliminary and permanent injunctive relief pursuant to applicable federal law and Rule 65 of the Federal Rules of Civil Procedure.

58. Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391(b).

59. A substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in Brevard County, Florida, within this judicial district.

## PARTIES

60. Plaintiff T.B. is a minor child residing in Florida.

61. T.B. is identified by his initials pursuant to Rule 5.2(a)(3) of the Federal Rules of Civil Procedure.

62. T.B. brings this action by and through his natural mother and legal guardian, Valerie White, pursuant to Rule 17(c).

63. Defendant PCCA at Lockmar is a Florida public charter school operating pursuant to Florida law under a charter authorized by the School Board of Brevard County.

64. PCCA provides publicly funded K–12 education.

65. PCCA exercised governmental authority over T.B.'s enrollment, attendance, educational placement, discipline, suspension, educational records, and access to public educational programs.

66. At all material times, PCCA acted under color of state law in performing those governmental functions.

67. Defendant School Board of Brevard County, Florida is the local educational agency responsible for the Brevard County public-school system.

68. The School Board authorized and exercised oversight concerning PCCA pursuant to Florida law.

69. The School Board participated in the disciplinary process concerning T.B.

70. The School Board entered the Final Order expelling T.B. from the Brevard County public-school system.

71. The School Board possesses, controls, maintains, or has access to educational records concerning students within the Brevard County public-school system, including records concerning T.B.

72. Defendant Paris Koblitz was, at all material times, the principal or principal's designee at PCCA.

73. Koblitz personally participated in T.B.'s suspension, disciplinary proceedings, recommendation for expulsion, and communications concerning those matters.

74. Defendant John Ottinger was, at all material times, an administrator at PCCA.

75. Ottinger personally participated in the investigation of the April 2024 incident, communications with Valerie concerning the investigation, disciplinary proceedings concerning T.B., and decisions related to the incident.

76. Koblitz and Ottinger acted under color of state law during the events alleged herein.

## GENERAL FACTUAL ALLEGATIONS

### *T.B.'s Educational History and Defendants' Prior Knowledge*

77. Before April 2024, T.B. had a documented history of academic and educational-support needs.

78. His educational history included a prior Individualized Education Program.

79. His educational history also included other disability-or support-related documentation.

80. On or about June 6, 2022, PCCA personnel expressly confirmed receipt of T.B.'s IEP paperwork.

81. PCCA personnel represented that the IEP materials had been printed and would be transmitted to appropriate school personnel.

82. PCCA therefore possessed actual notice of T.B.'s IEP-related educational history before April 2024.

83. The School Board likewise possessed or had access to educational records concerning T.B.'s prior educational history.

84. White had communicated with school personnel regarding T.B.'s educational needs.

85. Defendants therefore entered the April 2024 disciplinary process with information concerning T.B.'s educational history and needs.

***The April 2024 Incident***

86. On or about April 3 and April 4, 2024, an incident occurred between T.B. and a female student at PCCA.

87. School administrators learned of the incident and initiated an investigation.

88. School personnel obtained statements from students concerning what occurred.

89. T.B. reported refusing sexual contact on multiple occasions. A true and correct copy of T.B.'s written statement is attached hereto as **<u>Exhibit A</u>** and incorporated herein by reference.

90. T.B. reported that he repeatedly told the other student "No." *Id.*

91. T.B. reported that the other student nevertheless touched him sexually. *Id.*

92. T.B.'s account therefore materially conflicted with Defendants' characterization of him as having committed the sexual offense for which he was disciplined. A true and correct copy of PCCA's April 9, 2024, investigative statement is attached hereto as **<u>Exhibit B</u>** and incorporated herein by reference.

93. T.B. later provided a sworn statement to law enforcement. A true and correct copy of the Palm Bay Police Department investigative report documenting T.B.'s sworn statement is attached hereto as **<u>Exhibit C</u>** and incorporated herein by reference.

94. In that statement, T.B. again reported that he had not consented to the conduct. *Id.*

95. Law-enforcement records concerning the incident formally designated T.B. as a "Victim of Crime." *Id.*

96. Nevertheless, PCCA classified the incident as a Sexual Offense or "SXO" attributable to T.B. *See* Ex. B.

97. On April 4, 2024, Defendant Koblitz issued notice imposing a ten-day suspension upon T.B. based upon the alleged SXO violation.

98. T.B. began serving the suspension on April 5, 2024.

***Defendants Continue the Investigation While Advancing Discipline***

99. Following T.B.'s suspension, school personnel continued investigating the incident. A true and correct copy of a subsequent investigative statement prepared by PCCA personnel is attached hereto as **Exhibit D** and incorporated herein by reference.

100. White sought information concerning the accusations against her son.

101. She sought information concerning the evidence being considered.

102. She also sought information concerning whether discipline beyond the ten-day suspension would be imposed.

103. On April 8, 2024, White specifically asked Defendant Ottinger whether T.B. would receive additional discipline.

104. White also asked what information would become part of T.B.'s educational record.

105. Ottinger advised White, in substance, that the matter remained under investigation and that final discipline had not yet been determined.

106. White reasonably understood those representations to mean that Defendants had not yet reached a final disciplinary determination.

107. During the same general period, however, Defendants were preparing or advancing documentation toward T.B.'s expulsion.

108. Plaintiffs allege that the disciplinary process was therefore advancing substantially toward long-term exclusion while White was being told that the investigation remained open.

***Plaintiffs Dispute the Allegations and Request Access to the Evidence***

109. During the disciplinary process, T.B. reported that he had refused sexual contact on multiple occasions and disputed characterization of him as the sole perpetrator.

110. White repeatedly informed Defendants that her son maintained that he was the student who said "No."

111. White disputed Defendants' characterization of the incident. *See* Ex. D.

112. White requested further investigation.

113. White requested the records and evidence being used to discipline T.B.

114. White also requested T.B.'s educational records.

115. Records subsequently obtained by Plaintiffs referred to original handwritten witness statements generated during the investigation.

116. Plaintiffs were not provided with all such original witness statements before critical disciplinary decisions were made.

117. Instead, portions of the record available to Plaintiffs consisted of later summaries, references, or descriptions of earlier investigative materials.

118. Plaintiffs therefore lacked access to portions of the underlying evidentiary record before long-term discipline advanced toward finality.

119. Without access to those materials, Plaintiffs could not fully evaluate whether witness statements had been accurately summarized.

120. Plaintiffs could not fully determine whether conflicting information had been reconciled.

121. Plaintiffs could not fully determine whether information favorable to T.B. had been omitted or discounted.

122. PCCA later produced records relating to T.B. to law enforcement pursuant to subpoena.

123. Plaintiffs allege that records produced to law enforcement included materials that had not been timely made available to Plaintiffs despite White's requests during the disciplinary process.

***Disability-Related Concerns Are Raised***

124. During the disciplinary process, White specifically raised T.B.'s prior IEP.

125. She raised T.B.'s disability-related educational history.

126. She requested T.B.'s educational and exceptional-student-education records.

127. She requested appropriate disability-related review before Defendants imposed long-term discipline.

128. On or about April 12, 2024, Defendants prepared an Administrative Hearing Screening concerning T.B.

129. The screening stated, in substance, that there was "no reason to believe that a disability or handicap exists."

130. That statement was inconsistent with PCCA's prior receipt of T.B.'s IEP paperwork.

131. The screening also reflected that parent or teacher information was unavailable, marked inapplicable, or otherwise was not meaningfully incorporated in material respects.

132. White disputed the screening.

133. She declined to sign documentation she believed inaccurately or incompletely reflected T.B.'s educational and disability-related history.

***The April 15 Administrative Proceeding***

134. On April 15, 2024, Defendants conducted an administrative proceeding concerning T.B.'s discipline.

135. White participated.

136. During the proceeding, White challenged the factual summary being used against T.B.

137. She specifically raised the omission of T.B.'s repeated refusals of sexual contact.

138. She requested additional records.

139. She requested further investigation.

140. She raised T.B.'s educational history.

141. She raised the need for disability-related review before long-term disciplinary action became final.

142. On or about April 16, 2024, Defendant Koblitz informed White that PCCA intended to recommend T.B.'s expulsion from the Brevard County public-school system.

143. White continued requesting T.B.'s educational records.

144. She continued requesting additional review before final disciplinary action.

145. On April 17 and April 18, 2024, White continued seeking educational records and review.

146. On April 19, 2024, Koblitz formally recommended that T.B. be expelled through January 6, 2025. A true and correct copy of Koblitz's written recommendation for expulsion is attached hereto as **Exhibit E** and incorporated herein by reference.

***Disability Questions Continue While Expulsion Proceeds***

147. On or about May 10, 2024, district personnel prepared a memorandum concerning T.B.'s disability-related circumstances.

148. The memorandum concluded that T.B.'s alleged conduct was not related to a disability.

149. The memorandum recommended no additional disability evaluation.

150. Four days later, however, district personnel contacted White concerning scheduling a meeting to consider opening an educational evaluation for T.B.

151. District personnel later contacted White again concerning the possibility of opening an evaluation.

152. Those communications reflected the fact that issues concerning T.B.'s educational or disability-related needs remained under consideration while the expulsion process was still proceeding.

153. Defendants did not postpone the expulsion process until those issues were fully resolved.

***Final Expulsion***

154. On May 17, 2024, the Superintendent formally recommended T.B.'s expulsion to the School Board.

155. By that time, Defendants had been informed that White disputed the factual basis for the discipline.

156. Defendants knew that T.B. maintained he had refused the sexual contact.

157. Defendants knew that White had requested additional investigation.

158. Defendants knew that White had requested educational and disciplinary records.

159. Defendants knew that White challenged the adequacy of the disability-related review.

160. On May 28, 2024, the School Board approved the recommendation.

161. The School Board entered a Final Order expelling T.B. through January 6, 2025.

162. The resulting educational history reflected the SXO disciplinary finding and expulsion.

163. The stated period of expulsion later expired.

164. The expiration of the stated period did not eliminate the educational records generated through the disciplinary process.

***Continuing Records Problem and August 2026 Enrollment Crisis***

165. T.B. remains a minor.

166. He continues to require educational placement and services.

167. His prior educational records are necessary to accurately establish his educational history.

168. Those records are also material to determining his grade placement.

169. They are material to determine credits earned.

170. They are material to determine disability-related educational needs and services.

171. They are material to enroll in a receiving school.

172. In August 2026, White attempted to enroll T.B. in public school.

***August 18, 2026 — Formal Records Request***

173. On August 18, 2026, White personally went to Heritage High School located at 2351 Malabar Road N.W. in Palm Bay, Florida.

174. White met with Guidance Registrar Leanesa Burgos.

175. White completed and signed Heritage High School's Student Records Request Authorization Form.

176. The request was directed to PCCA.

177. The form identified the request as a first request.

178. White requested each of the eleven categories of records identified on the form.

179. Those categories included: cumulative file; official transcript; withdrawal grades; psychological records; health records; ESE audit; gifted audit; Section 504 plan; ESOL/ELL file; legal folder; and discipline records.

180. While White was present, Burgos telephoned PCCA regarding the requested records.

181. After the call, Burgos advised White that the person responsible for records transfers at PCCA had left for the day.

***August 19, 2026 — Incomplete Records***

182. On the morning of August 19, 2026, Burgos contacted White.

183. Burgos advised White that something had been received but that it was not T.B.'s complete records.

184. White returned to Heritage High School the same day.

185. When White asked what had been received, Burgos showed her a six-page document and provided her with a copy.

186. The six pages consisted of a Brevard County School District transcript printout.

187. The transcript reflected a print date of August 18, 2026.

188. The six pages contained no PCCA letterhead.

189. They contained no PCCA cover sheet or transmittal identifying PCCA as the sender.

190. They contained no fax header or email header identifying PCCA as the sender.

191. They contained no signature from a PCCA representative.

192. White therefore does not know whether PCCA itself transmitted those six pages.

***Missing IEP***

193. While White was present on August 19, Burgos searched the Brevard County school-district computer system for T.B.

194. Burgos advised White that she could not locate an IEP for T.B.

195. Burgos further advised that no such document appeared in the system she searched.

196. The absence of an IEP from the available district record is inconsistent with PCCA's prior acknowledgment that it received T.B.'s IEP paperwork.

197. Of the eleven categories of records formally requested by White, eight produced no documents.

198. White received no cumulative educational file.

199. She received no psychological records.

200. She received no ESE audit.

201. She received no gifted audit.

202. She received no Section 504 plan.

203. She received no ESOL/ELL file.

204. She received no legal folder.

205. She received no disciplinary records.

206. The absence of disciplinary records was particularly significant because the disciplinary proceedings at issue resulted in T.B.'s removal from PCCA and expulsion from the Brevard County public-school system.

***Remaining Records Are Also Incomplete***

207. The records received within the remaining categories were also incomplete.

208. The transcript contained a blank certification section.

209. It contained no signature certifying the transcript.

210. It contained no certification date.

211. It contained no school seal.

212. As to withdrawal information, the materials contained semester marks but no withdrawal form.

213. They contained no withdrawal date.

214. They contained no withdrawal code.

215. As to health information, White received an immunization table but no other health records.

216. The six-page record did not contain the disciplinary or expulsion paperwork explaining the circumstances under which T.B.'s attendance at PCCA ended.

217. The available transcript contained no educational information for the 2024–2025 school year.

218. It contained no educational information for the 2025–2026 school year.

219. Plaintiffs do not allege from that omission alone that T.B. received no education during those years.

220. Plaintiffs allege that the educational record presented for purposes of enrollment did not reflect those years.

221. The available record identified T.B. as a tenth-grade student.

222. It reflected no ninth-grade entry date.

223. It recorded T.B.'s total credits earned as zero.

224. Those deficiencies materially interfere with the ability of a receiving school to accurately determine T.B.'s educational history, earned credits, grade placement, disability-related needs, and appropriate services.

***August 24, 2026 — Direct Request to PCCA***

225. On August 24, 2026, White personally went to PCCA.

226. She requested T.B.'s educational records.

227. She specifically requested his IEP.

228. She requested the records because she was attempting to enroll T.B. in public school.

229. PCCA personnel did not provide the requested records.

230. White was told that PCCA would not help her.

231. She was told that she needed to leave or be arrested for trespassing.

232. White complied and left.

233. Later that day, the Palm Bay Police Department advised White that she had been trespassed from PCCA.

234. White had not previously received notice that she had been trespassed.

235. She was not provided written trespass documentation at that time.

236. Plaintiffs do not presently assert an independent federal cause of action based upon that trespass notice.

237. The fact is alleged because the trespass materially affects White's practical ability, as T.B.'s mother and guardian, to personally seek her minor son's educational records from PCCA.

***Present Injury***

238. As of the filing of this Verified Complaint, White has not received T.B.'s complete educational records.

239. PCCA has not provided White a written response explaining the absence of the requested records.

240. PCCA has not identified when the complete file will be produced.

241. The institutional Defendants possess, maintain, control, or have access to official educational records concerning T.B. that White cannot independently recreate.

242. White cannot independently create an official transcript.

243. She cannot create an official cumulative educational file.

244. She cannot create an official IEP maintained by the school.

245. She cannot recreate official ESE, Section 504, disciplinary, enrollment, withdrawal, or credit records.

246. T.B.'s education is occurring now.

247. Delay in establishing his educational history and credits interferes with his education now.

248. Delay in locating disability-related records interferes with appropriate educational placement and services now.

249. Delay in producing his records interferes with enrollment now.

250. School days lost during T.B.'s minority cannot be restored after final judgment.

251. Money cannot recreate classroom instruction that a child missed.

252. Money cannot recreate educational services that should have been delivered during a particular school year. Money cannot restore the continuity of education lost while a child waits for school records controlled by public educational institutions. Plaintiffs therefore suffer continuing and irreparable educational injury.

253. All general and statutory conditions precedent have either occurred or have been waived by operation of law.

254. Plaintiffs are entitled to recover reasonable fees in this action, pursuant to the Civil Rights Act, the ADA, and the Rehabilitation Act.

**COUNT I**
**42 U.S.C. § 1983**
**VIOLATION OF PROCEDURAL DUE PROCESS**
**FOURTEENTH AMENDMENT**
***Against Defendants Paris Koblitz and John Ottinger in Their Individual Capacities***

255. Plaintiffs reallege paragraphs 1 through 254.

256. T.B. possessed a constitutionally protected property interest in continued access to public education.

257. Defendants substantially deprived T.B. of that interest through long-term exclusion and expulsion.

258. Before imposing long-term exclusion, T.B. was entitled to constitutionally adequate notice and a meaningful opportunity to respond to the allegations against him.

259. Defendant Ottinger personally participated in the investigation and disciplinary process.

260. Ottinger knew that T.B.'s account materially conflicted with treating him solely as the perpetrator of the sexual incident.

261. Ottinger knew that T.B. maintained that he repeatedly refused the sexual contact.

262. On April 8, 2024, Ottinger advised White that the matter remained under investigation and that final discipline had not yet been determined.

263. At or about the same time, the process was advancing toward T.B.'s expulsion.

264. Defendant Koblitz personally participated in T.B.'s suspension and disciplinary process.

265. Koblitz formally recommended T.B.'s expulsion.

266. Before doing so, Koblitz knew that White disputed the material factual basis for the discipline.

267. Koblitz knew that White requested additional investigation.

268. Koblitz knew that White requested educational and disciplinary records.

269. Plaintiffs were not timely provided access to all material evidence necessary to meaningfully respond before the disciplinary process advanced to long-term exclusion.

270. Original witness statements and other investigative materials later referenced in the record were not made available to Plaintiffs before critical disciplinary decisions were made.

271. Plaintiffs therefore lacked a meaningful opportunity to evaluate and respond to material portions of the evidentiary basis supporting long-term discipline.

272. The disciplinary process advanced materially toward expulsion before T.B. received a meaningful opportunity to review and challenge the evidentiary basis for that result.

273. Under the circumstances, the process afforded to T.B. was constitutionally inadequate.

274. As a direct and proximate result, T.B. suffered loss of educational opportunities.

275. He suffered educational disruption.

276. He suffered reputational harm associated with the SXO finding and expulsion.

277. He suffered emotional distress and other damage according to proof.

278. Plaintiffs seek compensatory and nominal damages and such additional relief as permitted by law.

**WHEREFORE,** Plaintiffs, T.B., a minor, by and through his natural mother and legal guardian, VALERIE WHITE, demands judgment against Defendants, PARIS KOBLITZ and JOHN OTTINGER, and respectfully requests the entry of an Order awarding Plaintiffs with (i) nominal, compensatory, and punitive damages; (ii) reasonable attorneys' fees; (iii) costs of the action; (iv) prejudgment interest; and (v) any such other, further, and different relief as the Court deems appropriate.

## COUNT II
## MUNICIPAL LIABILITY UNDER 42 U.S.C. § 1983
***Against the School Board of Brevard County and PCCA***

279. Plaintiffs reallege paragraphs 1 through 254.

280. The School Board is a local governmental entity subject to suit under 42 U.S.C. § 1983.

281. PCCA exercised governmental authority concerning public education, student discipline, educational placement, and educational records pursuant to Florida law and authority granted through the public-school system.

282. The School Board possessed final authority to approve or reject the recommendation that T.B. be expelled from the Brevard County public-school system.

283. The School Board exercised that authority on May 28, 2024.

284. Before final action, the disciplinary record reflected that T.B. disputed material facts underlying the discipline.

285. The record reflected that T.B. maintained he refused the sexual contact.

286. Responsible officials had been informed that White requested additional investigation.

287. Responsible officials had been informed that White requested educational and disciplinary records.

288. Responsible officials had been informed that White challenged the disability-related review.

289. Despite those issues, the School Board approved the expulsion recommendation and entered the Final Order.

290. The School Board's final action constituted official governmental action.

291. That final governmental action made T.B.'s long-term exclusion final.

292. To the extent PCCA possessed final policymaking authority over T.B.'s suspension, school-level disciplinary determination, or maintenance and transfer of PCCA educational records, its challenged decisions constituted official action of PCCA.

293. The institutional Defendants continue to possess, maintain, control, or have access to records resulting from the challenged disciplinary and educational processes.

294. Those records continue to have present educational consequences for T.B.

295. The institutional Defendants' official actions were a moving force behind the deprivation of T.B.'s procedural-due-process rights.

296. As a direct and proximate result, T.B. suffered educational loss, educational disruption, reputational injury, emotional distress, and other damage.

297. Plaintiffs seek compensatory and nominal damages and appropriate declaratory and injunctive relief.

**WHEREFORE,** Plaintiffs, T.B., a minor, by and through his natural mother and legal guardian, VALERIE WHITE, demands judgment against Defendants, PINEAPPLE COVE CLASSICAL ACADEMY AT LOCKMAR and THE SCHOOL BOARD OF BREVARD COUNTY, FLORIDA, and respectfully requests the entry of an Order awarding Plaintiffs with (i) nominal and compensatory damages; (ii) reasonable attorneys' fees; (iii) costs of the action; (iv) prejudgment

interest; and (v) any such other, further, and different relief as the Court deems appropriate.

**COUNT III**
**TITLE II OF THE AMERICANS WITH DISABILITIES ACT**
**42 U.S.C. § 12131 *et seq.***
***Against the School Board of Brevard County and PCCA***

298. Plaintiffs reallege paragraphs 1 through 254.

299. The School Board is a public entity within the meaning of Title II of the ADA.

300. PCCA operated a public educational program and was subject to Title II with respect to the public educational services and activities alleged herein.

301. T.B. was a qualified individual with a disability within the meaning of Title II.

302. T.B. was otherwise qualified to participate in Defendants' public educational programs, services, and activities.

303. Before April 2024, Defendants possessed actual knowledge of T.B.'s disability-related educational history.

304. That knowledge included PCCA's confirmed receipt of T.B.'s IEP paperwork.

305. During the disciplinary proceedings, White specifically raised T.B.'s prior IEP and disability-related educational history.

306. White requested that Defendants meaningfully consider that history before imposing long-term exclusion.

307. Defendants nevertheless prepared disciplinary screening documentation stating that there was no reason to believe a disability existed.

308. That conclusion was inconsistent with educational information already possessed or available to Defendants.

309. Defendants later considered opening an additional educational evaluation while the expulsion process was continuing.

310. Reasonable modifications available to Defendants included reviewing T.B.'s complete disability-related educational history before final long-term exclusion.

311. Reasonable modifications included consulting appropriate disability or educational personnel familiar with T.B.'s educational needs.

312. Reasonable modifications included meaningfully considering information supplied by White.

313. Reasonable modifications included allowing meaningful parental participation in disability-related decision-making.

314. Reasonable modifications included completing appropriate disability-related review before finalizing a substantial change in T.B.'s educational placement.

315. Those modifications would have permitted Defendants to consider the actual educational circumstances of the individual student before permanently altering his educational placement.

316. Defendants failed to make reasonable modifications necessary to provide T.B. meaningful and equal access to the educational and disciplinary processes at issue.

317. Defendants proceeded with long-term exclusion despite actual notice of unresolved disability-related issues.

318. Defendants thereby denied T.B. meaningful and equal access to public educational programs and services by reason of his disability and Defendants' failure to reasonably accommodate disability-related needs.

319. Defendants had actual notice that Plaintiff was requesting disability-related consideration and accommodation.

320. Despite that notice, Defendants continued the challenged course of conduct.

321. Plaintiff alleges that Defendants acted with deliberate indifference to a substantial likelihood that their conduct would violate T.B.'s federally protected rights.

322. The present incompleteness of the educational records available within the public-school system compounds the ongoing injury.

323. In August 2026, the district system searched by the receiving school did not reflect T.B.'s IEP even though PCCA had previously acknowledged receiving his IEP paperwork.

324. Complete disability-related educational records are necessary to permit a receiving school to accurately assess T.B.'s educational history and needs.

325. As a direct and proximate result, T.B. suffered educational loss, denial of educational benefits, and other damages recoverable under applicable law.

326. Plaintiff seeks compensatory damages to the extent authorized by law and appropriate declaratory and injunctive relief.

**WHEREFORE,** Plaintiffs, T.B., a minor, by and through his natural mother and legal guardian, VALERIE WHITE, demands judgment against Defendants, PINEAPPLE COVE CLASSICAL ACADEMY AT LOCKMAR and THE SCHOOL BOARD OF BREVARD COUNTY, FLORIDA, and respectfully requests the entry of an Order awarding Plaintiffs with (i) nominal and compensatory damages; (ii) reasonable attorneys' fees; (iii) costs of the action; (iv) prejudgment interest; and (v) any such other, further, and different relief as the Court deems appropriate.

## COUNT IV
## SECTION 504 OF THE REHABILITATION ACT OF 1973
## 29 U.S.C. § 794
***Against the School Board of Brevard County and PCCA***

327. Plaintiffs reallege paragraphs 1 through 254.

328. The School Board and PCCA received federal financial assistance and operated programs or activities subject to Section 504.

329. T.B. was an otherwise qualified individual with a disability.

330. T.B. was otherwise qualified to participate in Defendants' public educational programs and services.

331. Defendants knew of T.B.'s disability-related educational history before imposing the challenged long-term educational consequences.

332. PCCA had previously acknowledged receipt of T.B.'s IEP paperwork.

333. During the disciplinary proceedings, White specifically raised T.B.'s prior IEP and disability-related educational circumstances.

334. Defendants nevertheless proceeded with substantial disciplinary and placement decisions without adequately considering disability-related records and reasonable accommodations necessary to afford T.B. meaningful and equal access to public education.

335. White specifically placed Defendants on notice of those concerns before T.B.'s expulsion became final.

336. Despite that notice, Defendants continued the expulsion process while material disability-related educational issues remained unresolved.

337. Defendants failed to provide reasonable accommodations necessary to afford T.B. meaningful and equal access to their educational processes and programs.

338. Plaintiff alleges that Defendants acted with deliberate indifference to a substantial likelihood that their conduct would violate T.B.'s federally protected rights.

339. As a result, T.B. was denied meaningful and equal access to educational programs, services, and benefits.

340. The continuing failure of the educational records presently available within the Brevard County public-school system to reflect T.B.'s complete

educational and disability-related history continues to interfere with appropriate educational placement and services.

341. As a direct and proximate result, T.B. suffered educational loss and other compensable injury.

342. Plaintiffs seek compensatory damages to the extent authorized by law and appropriate declaratory and injunctive relief.

**WHEREFORE,** Plaintiffs, T.B., a minor, by and through his natural mother and legal guardian, VALERIE WHITE, demands judgment against Defendants, PINEAPPLE COVE CLASSICAL ACADEMY AT LOCKMAR and THE SCHOOL BOARD OF BREVARD COUNTY, FLORIDA, and respectfully requests the entry of an Order awarding Plaintiffs with (i) nominal and compensatory damages; (ii) reasonable attorneys' fees; (iii) costs of the action; (iv) prejudgment interest; and (v) any such other, further, and different relief as the Court deems appropriate.

## COUNT V
## DECLARATORY AND PROSPECTIVE INJUNCTIVE RELIEF ARISING FROM THE FEDERAL VIOLATIONS ALLEGED IN COUNTS II–IV

***Against the School Board of Brevard County and PCCA***

343. Plaintiffs reallege paragraphs 1 through 254.

344. An actual and continuing controversy exists concerning Defendants' possession, maintenance, availability, completeness, use, and continuing effect of educational and disciplinary records concerning T.B.

345. Defendants continue to possess, maintain, control, or have access to records concerning T.B.

346. T.B. presently needs those records for continued public education.

347. The records made available in August 2026 were materially incomplete.

348. Eight categories expressly requested by Valerie produced no records at all.

349. The available district records did not reflect the IEP documentation PCCA previously acknowledged receiving.

350. The available records did not include the cumulative educational file.

351. They did not include disciplinary records.

352. They did not include complete withdrawal information.

353. They did not provide a complete history of credits and educational placement.

354. The record available to the receiving school reflected zero credits earned.

355. It contained no academic information for the two school years following T.B.'s departure from PCCA.

356. White formally requested the records through Heritage High School.

357. She thereafter personally requested the records directly from PCCA.

358. PCCA did not provide the requested records.

359. Instead, PCCA directed Valerie to leave.

360. Without complete educational records, T.B. faces continuing interference with enrollment.

361. He faces continuing interference with accurate grade placement.

362. He faces continuing interference with credit determination.

363. He faces continuing interference with disability-related educational review and services.

364. Those consequences occur while T.B. remains a minor and requires public education.

365. Monetary damage cannot restore educational opportunities lost while these records remain unavailable.

366. Plaintiffs therefore lack an adequate remedy at law for this ongoing injury.

367. Immediate prospective equitable relief directed to the institutional Defendants is necessary.

368. Plaintiffs demand preliminary injunctive relief requiring PCCA and the School Board to locate, produce, and transmit the complete educational records necessary to permit T.B.'s enrollment and continued education without further delay.

**WHEREFORE,** Plaintiffs, T.B., a minor, by and through his natural mother and legal guardian, VALERIE WHITE, respectfully requests that the Court enter an Order against Defendants, PINEAPPLE COVE CLASSICAL ACADEMY AT

LOCKMAR and THE SCHOOL BOARD OF BREVARD COUNTY, FLORIDA, as follows:

(a) enter judgment in Plaintiffs' favor on the claims established by the evidence;

(b) declare that Defendants deprived T.B. of rights secured by the Due Process Clause of the Fourteenth Amendment and, as established by the evidence, Title II of the ADA and Section 504 of the Rehabilitation Act;

(c) enter preliminary and permanent injunctive relief requiring PCCA and the School Board to immediately locate, provide, and/or transmit T.B.'s complete educational records necessary for his present enrollment and continued education;

(d) require PCCA and the School Board, within a time established by the Court, to provide or transmit, to the extent maintained, possessed, controlled, or accessible by them:

1. T.B.'s complete cumulative educational file;
2. official transcript and complete grade records;
3. enrollment and withdrawal records;
4. complete credit records;
5. Individualized Education Program records;
6. exceptional-student-education records;
7. educational evaluations and psychological records maintained as educational records;
8. Section 504 records;

9. health records maintained as part of the educational file;
10. disciplinary and expulsion records;
11. records necessary to determine T.B.'s appropriate present grade placement;
12. records necessary to determine educational services for which T.B. is eligible; and
13. all other educational records ordinarily necessary for the transfer and enrollment of a student in another public school;

(e) require Defendants, upon White's authorization, to transmit the records necessary for T.B.'s enrollment directly to Heritage High School or any other receiving educational institution identified by White;

(f) require Defendants to promptly identify in writing any specifically requested record that Defendants contend does not exist, cannot be located, has been destroyed, or is maintained by another entity;

(g) enjoin Defendants from withholding educational records necessary for T.B.'s enrollment or educational placement based upon the pendency of this litigation;

(h) require appropriate correction, supplementation, notation, segregation, or expungement of disciplinary or educational records ultimately determined by the Court to have been created, maintained, or used in violation of federal law;

(i) enjoin Defendants from relying upon records ultimately determined to have been unlawfully created or maintained to adversely affect T.B.'s enrollment, grade placement, eligibility, educational services, or future educational opportunities;

(j) award compensatory damages against the Defendants and under the causes of action for which such damages are legally recoverable;

(k) award nominal damages for proven violations of T.B.'s constitutional rights;

(l) award Plaintiff reasonable attorneys' fees, litigation expenses, and taxable costs pursuant to 42 U.S.C. § 1988, 42 U.S.C. § 12205, 29 U.S.C. § 794a, and other applicable law;

(m) retain jurisdiction to enforce any equitable relief entered by the Court; and

(n) award such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure and the Seventh Amendment to the United States Constitution.

**DATED:** September 16, 2026September 23, 2026

Respectfully submitted,

*Coleman Watson*
**Coleman W. Watson, Esq.**
Florida Bar. No. 0087288
California Bar No. 266015

Georgia Bar No. 317133
New York Bar No. 4850004
Email: coleman@alexanderhero.com

**ALEXANDER HERO**
20 North Orange Avenue, 11th Floor
Orlando, FL 32801
Tel: (407) 543-0111

*Attorneys for Plaintiffs*

**VERIFICATION**

STATE OF FLORIDA
COUNTY OF ORANGE

I, the undersigned, VALERIE WHITE, is a Florida citizen and one of the Plaintiffs in this civil action. As such, I have personal knowledge of the facts set forth in the Verified Complaint. I have reviewed the allegations of facts set forth in the Verified Complaint under penalty of perjury under the laws of the United States of America and the State of Florida and hereby verify that said facts are true, correct, and accurate to the best of my knowledge.

Dated this 16th day of September 2026.

Valerie White
VALERIE WHITE